## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

HAPPY CAMPER MANAGEMENT, LLC,
a Texas limited liability company,

       Plaintiff,

vs.                                     Civil No. 15-927 WJ/GBW

ERIC S. AMENT and MICHELE G. AMENT,
husband and wife; and APPLE TREE HOME
IMPROVEMENT, LLC, a New Mexico limited
liability company.

       Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss, filed May 9, 2016 (**Doc. 30**).   Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is not well-taken and, therefore, is denied.

## BACKGROUND

This is a dispute over the enforcement of a promissory note for the sale of a business. The instant motion addresses whether this Court has jurisdiction over the matter.

In mid-2012, Eric Ament approached Bruce Low about purchasing the Appletree Home Improvement business which operates in Ruidoso, New Mexico.   Mr. Low is the managing member of Happy Camper Management, LLC. ("Happy Camper"), the Plaintiff in this case.  He is also the managing member of the following entities that are related to this lawsuit: (1) Happy Camper, LLC (distinguished from Happy Camper Management, LLC); (2) Iron Gate Assets,

LLC (which as of December 31, 2014 is no longer in existence); and of (3) Appletree Home Improvement, LLC during the time Appletree was in existence.[1]

Three promissory notes were originally part of the business transaction involved in the sale of Mr. Low's business: (1) a promissory note dated December 18, 2012 in the amount of $158,766.00; (2) a promissory note dated December 28, 2012 in the amount of $90,000.00; and (3) a promissory note dated December 28, 2012 in the amount of $215,000.00.   All rights in these promissory notes have been assigned to Plaintiff, and were to be paid in full within two years of the date of each respective promissory note. The Aments defaulted on the notes. According to the Complaint, the only payments that have been made were on the $90,000.00 note.   The Aments made eight payments of $3,500.00 which total $28,000.00 in payments, leaving a $62,000 balance unpaid on this note.   To resolve the matter, the parties entered into a settlement agreement on February 26, 2015.   Under the terms of the agreement, the dispute was settled in exchange for a compromised payment which reduced the Aments' obligations from $463,766.00 to $350,000.00.

In the Joint Status Report, Defendants point out that the three promissory notes reflect the amount of the total purchase price of $1,973,766.00 that was not financed by bank financing. Doc. 12 at 3.   Defendants concede that they entered into the promissory notes, but point out that in addition to executing the notes, Plaintiff's predecessor-in-interest, Mr. Low, executed "Standby Agreements" on two of the three notes in cooperation with the bank ("SBA")[2] whereby Mr. Low agreed to "standby" and not sue Defendants without SBA's permission.   The executed

---

[1] Appletree Home Improvement, LLC ("Appletree") is distinct from Apple Tree Home Improvement, LLC. ("Apple Tree"). Apple Tree Home Improvement is the newly formed New Mexico LLC that was purchased by the Aments from Appletree Home Improvement, LLC which was managed by Mr. Low.  "Appletree" no longer exists at this time.  *See Compl.*, ¶3 (noting that Defendant Apple Tree Home Improvement, LLC ("Apple Tree") is "not to be confused with Appletree Home Improvement, LLC ("Appletree"), which was a separate entity with different owners that no longer exists.").

[2] Defendants do not identify "SBA" other than to provide these initials.  Doc. 12 at 3.

Standby Agreements are in the amount of $1,600,000.00. Defendants contend that Plaintiff is bound by the terms of these agreements because its predecessor-in-interest consists of the same individuals as Plaintiff's members. Defendants therefore argue that Plaintiff has brought this lawsuit prematurely because under the terms of the Standby Agreements, Plaintiff may not bring suit without the bank's approval. Defendants further argue that the absence of the bank's approval means that Defendants are not yet obligated to pay two of the promissory notes, which means that the balance of the one other note is insufficient to meet the jurisdictional amount required for federal jurisdiction. Defendants also contend that Plaintiff is domiciled in New Mexico and cannot meet the jurisdictional requirements for federal diversity jurisdiction under 28 U. S. C. §1332.

## DISCUSSION

Defendants claim there is no federal jurisdiction over this case because Plaintiff cannot meet either the citizenship prong for diversity jurisdiction, or the required threshold amount in controversy. In considering this issue, the Court will consider the parties' pleadings for the instant motion as well as the jurisdictional arguments that were initially raised in the pleadings related to Plaintiff's Motion to Enforce Settlement (Docs. 14, 19 & 20).

## I. Legal Standard

Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision,* 43 F.3d 507, 511 (10th Cir.1994) (citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[T]he party invoking federal jurisdiction bears

the burden of establishing its existence.");[3] *Penteco Corporation Limited v. Union Gas System, Inc.*, 929 F.2d 1519, 1522, n. 2 (10th Cir.1991) (As federal courts are courts of limited jurisdiction, jurisdiction is presumed not to exist absent proof by the party asserting it that it does).

Where the complaint does not assert a federal question, federal district courts have original jurisdiction of civil actions where there exist both complete diversity of citizenship and an amount in controversy in excess of $75,000.00.  28 U. S. C. §1332; *see Carden v. Arkoma Associates*, 494 U. S. 185, 187 (1990).  Plaintiff contends that the Court must accept as true its allegations as to jurisdiction to the extent they are uncontroverted by Defendants' affidavits. However, the standard for subject matter jurisdiction is actually quite narrow.  Because federal courts are courts of limited jurisdiction, there is a presumption against the existence of diversity jurisdiction.  *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir.1974); see *State Farm Mut. Automobile Ins. Co. v. Narvaez,* 149 F.3d 1269, 1271 (10th Cir. 1998) (jurisdictional questions "are of primary concern and can be raised at any time by courts on their own motion.").  Unlike personal jurisdiction, subject matter jurisdiction cannot be waived.  *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1175 (10th Cir.2005).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1). When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or other evidence properly before the court.  *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495,

---

[3] Plaintiff conflates its affirmative burden for establishing subject matter jurisdiction with the standard for determining whether a court has personal jurisdiction over a defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can*., 149 F.3d 1086, 1091 (10th Cir. 1998) (in the absence of an evidentiary hearing, plaintiff need only make a prima facie showing of personal jurisdiction over defendant); *see* Doc. 20 at 4; Doc. 31 at 2

1499 (10th Cir.1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995). A court has broad discretion to consider affidavits or other documents to resolve disputed jurisdictional facts under rule 12(b)(1).  *Id.*  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a Rule 56 motion.  *Id.*

## II.    Whether the Court Has Jurisdiction Over This Matter

The Complaint asserts that this Court has diversity jurisdiction under 28 U.S.C. ¶1332 based on the following: Plaintiff Happy Camper Management is a Texas limited liability company; that its LLC members are Bruce Low and Kristen Low[4] ("the Lows" or " Mr. and Mrs. Low") who are both domiciliaries of California; and that Defendants Eric and Michele Ament ("the Aments") are a married couple who are domiciliaries of Ruidoso, New Mexico.  Compl., ¶¶1-2.

## A.    Domicile

For purposes of diversity jurisdiction, a person is a citizen of a state "if the person is domiciled in that state." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). "[A] person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Middleton*, 749 F.3d at 1200. Stated differently, "domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians*, 490 U.S. at 48. "A domicile once acquired is presumed to continue until it is shown to have been changed." *Middleton*, 749 F.3d at 1200.

---

[4] The Court assumes that Kristin Low is the same individual as "Kristen Andros" which is seen on documents submitted by both parties, including voter registration documents.  *See* Docs. 30-1 & 33-1.

Defendants submit documents which are part of a "Texas Franchise Tax Public Information Report" to show that while Happy Camper may be a Texas limited liability company, its principal place of business and principal office is in New Mexico, and in addition, that the LLC's members also maintain their residence in Alto, Lincoln County, New Mexico—and not in California. Doc. 4-1. Unfortunately, the tax report information document cannot be used to show domicile for a limited liability company because under Tenth Circuit precedent, the citizenship of limited liability companies is determined by the citizenship of their members and not their principal place of business. *Siloam Springs Hotel, LLC v. Century Sur. Co*., 781 F.3d 1233, 1237-38 (10th Cir. 2015) (rejecting defendant's request to determine citizenship of Oklahoma limited liability company "by reference to its state of organization and the state of its primary business operations" and "join[ing] all other circuits that have considered the matter in concluding Siloam Springs takes the citizenship of all its members"). Thus, the question must shift to the domicile of the LLC *members* at the time the complaint was filed. *See Siloam Springs Hotel, LLC v. Century Surety Co.,* 781 F.3d 1233, 1239 (10th Cir. 2015) ("the relevant time for determining the existence of complete diversity is the time of the filing of the complaint"; *Freeport-McMoRan, Inc. v. KN Energy, Inc*., 498 U.S. 426, 428 (1991)

It is undisputed that Bruce Low and his wife Kristen Andros are the LLC members of Happy Camper. Defendants contend that the tax report information document proves that the Lows maintain their residence in Alto New Mexico because the exhibit lists an "Alto, NM" address for both "Kristen Andros" and Bruce Low. However, this document is not dispositive of the domicile question. Just because the Lows chose to use a New Mexico mailing address on the tax report document does not mean that they are domiciled in New Mexico and intend to remain there. Plaintiff submits evidence showing that he and his wife are domiciled in California. Mr.

6

Low's March 18, 2016 affidavit states that he has lived in California since 1950 and Mrs. Low has lived there for about nineteen years.   Doc. 20-1.   They currently live in a portable recreational vehicle ("RV") while traveling the country as part of their retirement, and park the RV at a permanent facility in Banning, California where they pay a monthly rental fee.   *Id., ¶¶* 3-5.   The New Mexico address has been used for Happy Camper's business operations because that is where the company maintains its primary operations, which is not a consideration in determining citizenship for limited liability companies.   The real estate at that address is a vacation home. *Id.,*¶6-7.   The Lows have never intended to remain in New Mexico indefinitely and have never registered to vote there and while the Lows are currently travelling around the country, they plan to stay in California as their resident state.   *Id., ¶¶*8-9.   Plaintiff also attaches as exhibits a voter ballot form for Bruce Low and a Voter Registration Abstract for Mrs. Low. *See* Doc. 31-1 (voter ballot for Bruce Low); Doc. 33-1 (abstract of Affidavit of Registration for Kristen Andros).

Defendants argue that Plaintiff's tax returns and voter registration forms are not necessarily dispositive of the domicile issue, pointing out that in the *Middleton v. Stephenson* case, cited above, the plaintiff had submitted the same kinds of proof and the court there found it insufficient to establish domicile in Wyoming.   749 F.3d at 1202.   However, in that case, the court had additional evidence to consider which weighed against domicile in Wyoming, such as: statements of plaintiff's intention to move back to Utah; regular attendance at a church in Utah; plaintiff's business operations run out of an office in Utah with several employees working there; plaintiff's membership interest in two Utah-based LLC's, each listing plaintiff's address as a Utah office; several business interests in multiple fitness clubs in Utah; personal bank accounts in Utah; and Utah license plates on cars driven by plaintiff and his family.   After considering all

7

this additional evidence, the *Stephenson* court found that the district court had erred in concluding plaintiff was domiciled in Wyoming and that the evidence weighed in favor of finding that plaintiff was a citizen if Utah where defendant also lived, thus destroying a basis for diversity.

Defendants insist that the Lows were domiciled in Lincoln County, New Mexico, at the time the complaint was filed, and that Plaintiff's domicile was changed to California subsequently. Defendants contend that the tax documents reports showing a New Mexico mailing address are dated from 2013 through 2015 and therefore prove a New Mexico domicile. Doc. 34-3. Defendants also submit a 2012 Certificate of Formation for Happy Camper showing an address of Houston, Texas for Bruce Low. Doc. 34-2. The Court has already rejected the tax report documents as evidence of domicile, and the Certificate of Formation for 2012 does not shed any light on the Lows' domicile for 2015, the year the complaint was filed. Defendants correctly point out that the voter registration form and ballot indicate only that the Lows are new registered voters in the state of California. The registration date on Kristen Andros' Voter Registration Abstract is May 17, 2016 (Doc. 33-1), and there is no date to be found on Mr. Low's California voter ballot from Los Angeles County (Doc. 31-1). While this evidence may not be dispositive of the domicile question specifically for the year 2015, it certainly does not suggest that (as Defendants contend) that Plaintiff changed domicile after the lawsuit was filed from Lincoln County, New Mexico to Los Angeles County, California.

Domicile is where a person resides and intends to remain indefinitely. *Middleton,* 759 F.3d at 1200. The Court finds that Plaintiff has submitted sufficient evidence of this intent, although it is a close call. Mr. Low's affidavit indicates that both he and his wife owned homes in California and lived there for a considerable length of time prior to the filing of the complaint.

8

The fact that they both now travel the country in an RV does not attenuate their intent to continue to make California their home.  They continue to pay a monthly rental fee to house the RV at a permanent facility on a friend's ranch in Banning, California and stayed there for several months in 2014, 2015 and 2016, which spans the time the complaint was filed  Also, the fact that they have a vacation home in Lincoln County, New Mexico does not negate the Lows' intent to be domiciled in California.  Many people who own a vacation home or live temporarily away from their home for one reason or another make plans to receive mail at that other location.  Finally, while Defendants make much over the recent date of the voter ballot and registration forms submitted by Plaintiff as evidence of a California domicile, there is no evidence that either of the Lows ever registered to vote in New Mexico.  In fact, Mr. Low states in his affidavit that neither he nor his wife ever intended to remain in New Mexico indefinitely, and that neither has ever registered to vote in New Mexico.  Doc. 20-1, ¶ 8.  There is no evidence presented which suggests that the Lows' long-standing intention to make California their home has been changed, and thus this intention is presumed to have existed at the time the complaint was filed.  *See Middleton*, 749 F.3d at 1200 ("A domicile once acquired is presumed to continue until it is shown to have been changed.").

While the Court finds Plaintiff's evidence to be sufficient, it is not unassailable.  It is, after all, convenient for the Lows to have a traveling RV currently stationed in a state that would allow them to file a lawsuit in this  federal court, and only a vacation home in a state that would destroy a basis for diversity.  It would have been preferable to be able to see documentary proof of the monthly rental fee payments for housing the RV in California, evidence of claimed state of residence on state or federal income tax returns or other indicia of residence for any of the California homes which Mr. Low he claims to have owned just prior to filing this lawsuit.

9

However, Defendants have not presented evidence that Plaintiff fabricated a California domicile after they filed the complaint and there is no suggestion at this point that Plaintiff has done so.

Thus, the Court finds that while Happy Camper is a Texas limited liability company, and while the Lows have connections to New Mexico, the evidence sufficiently indicates that both members of the Plaintiff LLC are domiciled in California.  Because all Defendants are New Mexico citizens, the Court therefore finds that Plaintiff has met the citizenship requirement for diversity jurisdiction.

B.     Amount-In-Controversy

When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiff must show "that it does not appear to a legal certainty that he cannot recover the jurisdiction amount."  *Woodmen of World Life Ins. Society v.* Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003); *Adams v. Reliance Standard Life Ins. Co*., 225 F.3d 1179, 1183 (10th Cir. 2000) (burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount).

In a rather obliquely presented argument, Defendants contend that the instant lawsuit is all about a promissory note with a remaining balance of $62,000.00, which falls short of the $75,000.00 threshold amount required for diversity jurisdiction.  Defendants argue that Plaintiff had executed Standby Agreements in relation to two of the three promissory notes (the notes for $158.766 and $215,000) which are not enforceable without the bank's approval and which therefore cannot be included when assessing a jurisdictional amount.  Defendants offer no substantive discussion as to why these two other notes should not become part of the jurisdictional analysis even though this lawsuit seeks to enforce payment on all three notes, nor do Defendants attach any evidence of these agreements signed by Plaintiff—somewhat of an

oversight considering that these are documents which purportedly form the lynchpin of Defendants' argument challenging the amount-in-controversy.

As it turns out, the existence of these Standby Agreements does not affect the monetary amount at issue in this lawsuit.  These agreements are, as characterized by Plaintiff, "separate contractual agreements related to a third-party creditor."  Doc. 31 at 7.  Whether or not all three notes are enforceable is a question to be considered on the merits, not as part of the jurisdictional question.  In certain instances, a court may determine that jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the case's merits and that the jurisdictional question should be resolved under either Rule 12(b)(6) or Rule 56.  For example, when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined.  *See Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1263 n.2  (10th  Cir. 2007); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir.1999), *cert. denied*, 528 U.S. 964 (1999) (discretionary-function exception to suit under Federal Tort Claims Act intertwined with merits of case for purposes of jurisdictional analysis).  The jurisdictional analysis here is not dependent on a consideration of whether two of the promissory notes are in fact enforceable under the Standby Agreements, and so there is no reason to omit the amounts of these two notes from the alleged jurisdictional amount and from the Court's jurisdictional analysis.

The Complaint is captioned as a "Complaint for Breach of Promissory Notes."  Doc. 1.  All three of the promissory notes form the basis for the Complaint, are described within the text of the Complaint, and are attached as exhibits.  *See* Docs. 1-1,1-4, 1-6.  As described previously, the amount of the allegedly unpaid balance of the notes is $463,766.00. This amount more than satisfies the amount-in-controversy for diversity jurisdiction, and the Court finds that it is clear,

from the face of the pleadings, that it is not a legal certainty that Plaintiff's claim is less than $75,000.00.   Moreover, even the negotiated reduced amount based on the parties' settlement agreement is $350,000.00, clearly in excess of the $75,000 jurisdictional threshold amount.

## CONCLUSION

In sum, the Court finds and concludes that both members of the Happy Camper LLC are domiciled in California.  Because all Defendants are New Mexico citizens, the Court therefore finds that Plaintiff has met the citizenship requirement for diversity jurisdiction.

The Court also finds and concludes that the jurisdictional analysis should include all three of the promissory notes which form the basis for Plaintiff's claims, and that the monetary amount of these notes exceeds the threshold amount-in-controversy under 28 U.S.C. §1332.

The Court also makes a point here that the jurisdictional question may be revisited by Defendants after further discovery,  or raised by the Court at any time should it become apparent that diversity jurisdiction did not in fact exist at the time of the filing of the complaint. *See Bd. of Cty. Commissioners for Garfield Cty, Colo. v. W.H.I, Inc. et al*., 992 F.2d 1061, 1063 (10th Cir. 1993) (Jurisdictional questions are of primary concern and can be raised at any time by courts on their own motion).  Further, should it be determined that federal jurisdiction was premised on either misrepresentations or omissions by Plaintiff, the Court will consider sanctions against the Lows.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (**Doc. 30**) is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT JUDGE