**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

HAPPY CAMPER MANAGEMENT, LLC,
a Texas limited liability company,

        Plaintiff,

      vs.                                                 Civil No. 15-927 WJ/GBW

ERIC S. AMENT and MICHELE G. AMENT,
husband and wife; and APPLE TREE HOME
IMPROVEMENT, LLC,

a New Mexico limited liability company.

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**
**and**
**ORDERING PARTIES TO SUBMIT STATUS REPORT**

       THIS MATTER comes before the Court upon Plaintiff's Motion to Enforce Settlement Agreement, filed February 9, 2016 (**Doc. 14**).    Having reviewed the parties' briefs and applicable law, I find that Plaintiff's motion is well-taken and shall be granted.

**BACKGROUND**

       This is a dispute over the enforcement of  promissory notes for the sale of a business.  In mid-2012, Eric Ament approached Bruce Low about purchasing the Appletree Home Improvement business which operates in Ruidoso, New Mexico.[1]   Mr. Low is the managing member of Happy Camper Management, LLC. ("Happy Camper"), the Plaintiff in this case.  He is also the managing member of the following entities that are related to this lawsuit: (1) Happy Camper, LLC (distinguished from Happy Camper Management, LLC); (2) Iron Gate Assets,

_____

[1] Defendant had contested subject matter jurisdiction based on diversity, but the Court denied Defendant's motion to dismiss on that issue.  Doc. 37.

LLC (which as of December 31, 2014 is no longer in existence); and of (3) Appletree Home Improvement, LLC. during the time Appletree was in existence.

Three promissory notes were originally part of the business transaction involved in the sale of Mr. Low's business: (1) a promissory note dated December 28, 2012 in the amount of $90,000.00 ("Note 1"); (2) a promissory note dated December 18, 2012 in the amount of $158,766.00 ("Note 2"); and (3) a promissory note dated December 28, 2012 in the amount of $215,000.00 ("Note 3").  *See* Exs. A, B & C (attached to Complaint).  All rights in these promissory notes have been assigned to Plaintiff, and were to be paid in full within two years of the date of each respective promissory note.  Happy Camper is the holder on all three notes. The Aments defaulted on the notes.  According to the Complaint, the Aments made eight payments of $3,500.00 on Note 1 only, amounting to $28,000.00 in payments, leaving a $62,000 balance unpaid on this note.  To resolve the matter, the parties entered into a settlement agreement on February 26, 2015.  Under the terms of the agreement, the dispute was settled in exchange for a compromised payment which reduced the Aments' obligations from $463,766.00 to $350,000.00, but Plaintiff claims that no payment has been made to fulfill that settlement agreement.  Doc. 12 at 2.

In the Joint Status Report, Defendants point out that the three promissory notes reflect the amount of the total purchase price of $1,973,766.00 that was not financed through bank financing.  Doc. 12 at 3.  Defendants concede that they entered into the promissory notes, but point out that in addition to executing the notes, Plaintiff's predecessor-in-interest, Mr. Low, executed "Standby Agreements" on two of the three notes in cooperation with the bank ("SBA") whereby Mr. Low agreed to "standby" and not sue Defendants without SBA's permission.  The executed Standby Agreements are in the amount of $1,600,000.00.  Defendants contend that

Plaintiff is bound by the terms of these agreements because its predecessor-in-interest consists of the same individuals as Plaintiff's members.   Defendant therefore argues that Plaintiff has brought this lawsuit prematurely because under the terms of the Standby Agreements, Plaintiff may not bring suit without the bank's approval.

## DISCUSSION

**I.     Enforcement of the Settlement Agreement**

The issue here is whether the Court will enforce the parties' private settlement agreement. Plaintiff maintains that it is entitled to performance under the settlement agreement under New Mexico law and requests that the Court enforce the agreement by entering judgment requiring Defendants to pay Plaintiff $350,000.90, plus applicable prejudgment interest.

In New Mexico, "[p]ublic policy encourages settlement agreements, and the courts have a duty to enforce them."  *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, 131 N.M. 450 (Ct.App. 2002).   New Mexico courts begin the analysis on enforcement of a settlement agreement "by recognizing and enforcing the strong policy of favoring settlement agreements." *Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc*., 2006-NMCA-053, 139 N.M. 508.   The parties stipulate that New Mexico law controls in this case, which is consistent with Tenth Circuit precedent.   *See Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) ("Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law.").

Courts "look favorably when parties resolve their disputes, and as a result, hold such agreements in high regard and require a compelling basis to set them aside."  *Builders Contract Interiors,* 2002-NMCA-053, 7.   "Generally, in order to set aside or avoid a written settlement or release, there must be evidence of misrepresentation, fraud, undue influence, coercion or mutual

mistake, and such evidence must be clear and convincing." *Quintana v. Motel 6, Inc*., 1983-NMCA-134,102 N.M. 229, 230, 693 P.2d 597, 598 (Ct. App. 1984). "An agreement of settlement cannot be set aside merely because in light of subsequent events it proves to have been unwise or unfortunate." *Envtl.   Control, Inc.,* 2002-NMCA-003, 19; *accord Woods v. Denver Dep't of Revenue, Treasury Div*., 45 F.3d 377, 378 (10th Cir. 1995) ("Ordinarily, a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind.").

Defendants offer three arguments supporting its position that the settlement agreement should not be enforced, but none of these arguments have merit.   The Court addresses each in turn.

A.   Financing Contingency

Defendants contend that the settlement agreement was, from the very beginning of the negotiations, intended to be contingent upon them being able to obtain a loan from the bank, which was the same financial institution that handled the original business transaction. Defendants were denied that loan because there were insufficient funds from the business or any other resource that would have allowed them to make payments as set forth under the settlement agreement.   Defendants offer a series of emails as exhibits reflecting the financial contingency as part of the agreement.   Ex. A.   These emails document some of the progress Defendants were making in getting financing from the bank, but they do not in any way indicate that Defendants' obligation to pay under the terms of the settlement agreement was contingent on Defendants' procuring these funds.   The emails pre-date the settlement agreement by at least one week, if not several months, yet the Aments voluntarily entered into a settlement agreement that does not mention a financing contingency.   Exs. A & B.   The agreement provides in part that:

4

The parties have entered into an Agreement whereby the Lows will accept Three Hundred Fifty-Thousand Dollars ($350,000), in full satisfaction of all obligations of the Aments to them. The Lows have signed and delivered to GSV Title the original notes and mortgage releases prepared by the GSV Title. When GSV Title is notified that this final settlement agreement is signed by both parties GSV will disburse the $350,000 to the Low's account at City Bank and record the Mortgage Releases and deliver the original notes to City Bank.

Ex. 1. The settlement agreement contains no provision which would allow consideration of extra-contractual terms, even if the emails were evidence of such a contingency, and instead makes it clear that the final written agreement constitutes the entirety of the parties' agreement:

This Agreement **contains the entire agreement between the parties**, their agents, representatives and employees, and it is agreed that the terms of this Agreement are contractual and not a mere recital.

* * *

The terms provisions and conditions contained herein **may not be changed orally, and may be changed only by written agreement signed by all parties hereto**, and no course of dealings between the parties hereto or any of their officers, agents, employees, or attorneys, shall constitute a waiver of the provisions of this Agreement unless evidenced by a written agreement executed by all parties hereto.

Ex. 1 (Settlement Agreement), ¶¶11 & 13 (emphasis added). Defendants insist that the settlement agreement was contingent upon the Defendants being granted a loan from the bank, but they conveniently ignore these portions of the settlement agreement.

There is no basis for Defendants' argument that their performance under the settlement agreement was contingent on financing from the bank. The emails mention the incorporation of additional terms to reflect that the agreement would be binding on heirs, successors and assigns, but do not mention any financing contingency. The emails also evince an intention on the part of Plaintiff to give Defendants more time to obtain financing in order to perform on the settlement agreement. However, offering a party a reasonable time to perform under a contract or agreement

5

is different from a *condition* which excuses a party's performance.  "Generally, a condition precedent is an event occurring subsequently to the formation of a valid contract, an event that must occur before there is a right to an immediate performance, before there is breach of a contractual duty, and before the usual judicial remedies are available." *W. Comm. Bank v. Gillespie*, 1989-NMSC-046, 108 N.M. 535, 537, 775 P.2d 737, 739.  Moreover, courts have construed contract terms as imposing a duty rather than creating a condition because of the harsh consequences to the other contractual party when a condition excuses performance and favors forfeiture.  *See United Props. Ltd. Co. v. Walgreen Props., Inc.,* 2003-NMCA-140, 134 N.M. 725. Neither the emails nor the fact that Plaintiff afforded the Aments additional time to obtain financing constitutes evidence of the parties' intent to include a financing contingency in the agreement.

Based on the language and terms of the settlement agreement, the parties' final understanding was that Defendants would be required to pay the agreed-on sum, which was a reduction from the amounts owed in the original promissory notes, without regard to whether they needed to secure third-party financing in order to meet their obligation.   It may well be that on hindsight, Defendants believe a financing contingency provision should have been included, but the Court cannot rewrite or modify the terms of the settlement agreement.  *See Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, ¶ 11, 111 N.M. 57, 801 P.2d 639 ("This Court will not rewrite a contract to create an agreement for the benefit of one of the parties that, in hindsight, would have been wiser."); *ConocoPhillips Co. v. Lyons*, 013-NMSC-009, ¶23, 299 P.3d 844 (the court's duty is "confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties"); *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 71, 115 N.M. 690, 858 P.2d 66 ("It

is not the function of the courts in this state to rewrite a contract by implying covenants between parties when an express written agreement exists.").

B.   Consideration

Defendants also contend that the settlement agreement fails for lack of consideration. Doc. 52 (Resp.) at 3.

Consideration consists of a "promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 16 (quoting *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 12. "Consideration adequate to support a promise . . . must be bargained for by the parties. Something is bargained for 'if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" *Romero v. Earl*, 1991-NMSC-042, ¶ 6, (quoting Restatement (Second) of Contracts § 71 (1981)).   The Court agrees with Plaintiff that the terms of consideration are plainly set forth in the opening paragraphs of the settlement agreement: (1) Defendants entered into three promissory notes; (2) they are in default on these notes; and (3) the outstanding balance on these notes totals $463,766 plus interest.   Ex. 1 (Settlement Agreement), ¶¶ 1-3. As a compromise agreement, Plaintiff was willing to accept a portion that amount ($350,000) in order to resolve the parties' "claims that have been alleged or could have been brought."   *Id.,* ¶¶ 4 & 6).   In other words, Plaintiff agreed to accept less money than it was entitled to receive under the promissory notes and forego pursuing any claims it may otherwise have against Defendants in exchange for receiving the negotiated amount of funds under the settlement agreement.   *See Nakashima v. State Farm Mutual Auto. Ins. Co.*, 2007-NMCA-027, ¶13, 141 N.M. 239, 153 P.3d 664. (finding adequate consideration to support an insurance premium payment plan contract where the insurer "gave up its right to obtain the

payment of premium in a lump sum, whereas Plaintiff obtained the right to pay her premium in installments in exchange for a fee.").

Defendants note that consideration cannot exist where the claim being surrendered has no foundation.  *See Nixon-Foster Service Co. v. Morrow,* 1936-NMSC-068, ¶12, 41 N.M.67, 64 P. 2d 92.  That observation does not apply here because it cannot be said that Plaintiff's claims against the Aments are not meritorious.   Defendants cannot rely on a defense of lack of consideration because the express language of the settlement agreement describes and defines the terms of the consideration given.

    C.    <u>Standby Agreements</u>

Defendants' final argument is that Plaintiff has no right to collect the amounts owed until 2038 under the Standby Agreements, but this argument fails.  The Court observes that these Standby Agreements do not attenuate the merits of Plaintiff's underlying claims against Defendants.  They simply delay the timing for when Plaintiff could sue on the promissory notes. Moreover, the exhibits submitted by Defendants as copies of the Standby Agreements do not support the proposition that Plaintiff could not sue on the notes until the year 2038.  The Standby Creditor's Agreements were executed in June 2013.  Exs. C & D. These agreements were executed "[t]o induce City Bank New Mexico (Lender) to make an SBA guaranteed loan to Standby Borrower [the Aments] . . . ."  Under the Standby Agreements, the Standby Creditor [Happy Camper] agreed to "accept no further payments on the Standby Loan until December 28, 2014, unless notified by Lender to stop accepting payments."  The Court cannot find any reference to the year 2038 as the start date for the repayments, nor do Defendants give any explanation for this statement.

Plaintiff contends that any defenses Defendants may have to the collection of the promissory notes are precluded by the settlement agreement. *See Nixon-Foster Serv.Co. v. Morrow,* 41 N.M.67 (1936) ("If there was a valid compromise agreement, further controversy in regard to the first agreement is ended."). Waiver is "intentional abandonment or relinquishment of a known right." *Palenick v. City of Rio Rancho,* 2013-NMSC-029, ¶14, 306 P.3d 407.

Specifically, Plaintiff argues that even assuming that Standby Agreements served to stave off Plaintiff's collection of the debt, Defendants waived these protections once they voluntarily entered into the settlement agreement twenty months later. In other words, Plaintiff views the settlement agreement at issue here as an accord and satisfaction which was substituted for payment of the promissory notes. *See Corona v. Corona,* 329 P.3d 701 (N.M.Ct.App. 2014) (describing accord and satisfaction as a "method of discharging a contractual obligation by substitution for such contract an agreement for the satisfaction thereof and performing the substituted agreement"); *Bennett v. Kisluk,* 112 N.M. 221, 223 (1991) (defining accord and satisfaction). Defendants were aware of the terms of the Standby Agreement when they agreed to make the mandatory payment required by the Settlement Agreement.

The Court agrees with Plaintiff that the execution of the settlement agreement constitutes an accord and satisfaction for payment of the promissory notes, and that any defenses Defendants might have had to payment of the promissory notes do not transfer as defenses to the payment under the settlement agreement. There is no legal basis to find that Defendants would still be able to assert the Standby Creditor's Agreement as a defense to Plaintiff's breach of contract claim. They cannot seek refuge in a defense that was rendered moot once the parties renegotiated and ultimately executed a different settlement months later, nor can the Court go back in time and rewrite the settlement terms to include language that was not considered and

agreed to by the parties.  In contrast, Plaintiff has waived all claims they had against Defendants as a compromise in furtherance of settlement, and they agreed to a substantially reduced amount on what was originally owed in furtherance of settlement.

Based on the above findings, the Court finds that the settlement agreement should be enforced.  Plaintiff's reference to *Paradiso v. Tipps Equip.* provides an appropriate commentary to this situation:

> [t]here is little that can discourage settlement activity more than to permit a party to renege at will after an agreement is reached . . . following fair negotiations, and when the parties have had full opportunity to know the facts necessary to make knowing, informed decisions.

2004-NMCA-009, ¶34.

## II.    Prejudgment Interest

Plaintiff contends that it is entitled as a matter of right to a prejudgment interest award of 15% under NMSA 1978 §56-8-3, given that the amount owed is readily ascertainable from the contract.  Plaintiff seeks interest on the $350,000.00 owed under the settlement agreement from the date of the agreement forward.  The statute is applicable here, since New Mexico law governs.  *See Olcott v. Delaware Flood Co*., 327 F.3d 1115, 1126 (10th Cir. 2003) (where state law claims are before a federal court on supplemental jurisdiction, state law governs the court's award of prejudgment interest).

Because the settlement agreement specifically calls for payment of the specific sum of $350,000.00, Plaintiff is entitled to prejudgment interest, which is awarded "as a matter of right under Section 56-8-3" when "the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices."  *State ex rel. Bob Davis Masonry, Inc. v. Safeco Ins. Co. of Am*., 1994-NMSC-106, 118 N.M. 558, 560-61, 883 P.2d 144, 147; *see also City of Farmington v. Amoco Gas Co.*, 777 F.2d

554, 556 (10th Cir. 1985) (affirming district court's decision to award prejudgment interest under NMSA 1978, § 56-8-3 in case involving contract claims).

Defendants are silent on the prejudgment interest issue, and the Court finds no reason to deny Plaintiff's request for the full amount of prejudgment interest, since New Mexico courts have recognized that in a typical case the full 15% interest rate should be awarded.  *See Sunwest Bank of Albuquerque, N.A. v. Colucci*, 117 N.M. 373, 379, 872 P.2d 346, 352 (1994) (noting that claimant is entitled to prejudgment interest at the fifteen-percent rate); *Bob Davis Masonry, Inc.,* 1994-NMSC-106, ¶5 (when amount owed is fixed or readily ascertainable, prejudgment interest "generally should be awarded absent peculiar circumstances as a matter of right").

## III.    Remaining Issues

In the Amended Complaint, Plaintiff seeks a judgment in its favor on the enforcement of the settlement agreement.  Doc. 39 at 8.  However, Plaintiff also seeks judgment in its favor on the promissory notes as well "in case Defendants claim that they are not bound by the settlement agreement"—which is exactly the position Defendants have taken here.  Doc. 12 (Jt. Status Rep't) at 3.

Plaintiff recognizes that as the non-breaching party, it can "elect either to return to the parties' preexisting obligations or to enforce the Agreement."  *Wagner Equip. Co. v. Wood,* 938 F.Supp.2d 1203, 1210 (D.N.M. 2013).   Count I is pled to enforce the settlement agreement, and the other claims are asserted as an alternative to Count I should the Court not enforce the Settlement Agreement.  Doc. 39, ¶36.[2]  The Court's conclusion that the settlement agreement should be enforced effectively resolves this lawsuit in its entirety.  However, certain loose ends remain, such as Plaintiff's request for an appointment of a receiver and an award of attorneys' fees and costs.  Doc. 39 at 9.  The Court mentions these two items not to suggest that either of

---

[2]   Counts II, III and IV assert breaches of the three promissory notes, and Count V alleges unjust enrichment.

them have any merit, but to ensure that this matter has been fully and completely sorted out. Parties shall submit to the Court a **Joint Status Report** (1) apprising the Court whether any claims or issues remain in this lawsuit and list such claims or issues; and (2) for any remaining claims or issues, advise the Court whether settlement negotiations would be appropriate or fruitful.  The parties shall submit this report to the Court **within ONE (1) week of the entry of this Order.**

## CONCLUSION

In sum, the Court finds and concludes that the settlement agreement between the parties shall be enforced and that Plaintiff is entitled to prejudgment interest under New Mexico law.

The Court also orders that the parties submit a status report regarding whether any claims or issues remain and if so, whether they are amenable to settlement negotiations.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Enforce Settlement Agreement **(Doc. 14)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that **within ONE (1) week of the entry of this Order,** parties shall submit to the Court a **Joint Status Report** (1) apprising the Court whether any claims or issues remain in this lawsuit and list such claims or issues; and (2) for any remaining claims or issues, advise the Court whether settlement negotiations would be appropriate or fruitful.

_____
UNITED STATES DISTRICT JUDGE